## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| CASEY DIENEL, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. _____** |
| v. | ) | |
| | ) | **JURY DEMAND** |
| WARNER-TAMERLANE PUBLISHING | ) | |
| CORP., SONNY MOORE, KOBALT | ) | |
| MUSIC PUBLISHING AMERICA, INC., | ) | |
| JUSTIN BIEBER, BIEBER TIME | ) | |
| PUBLISHING, LLC, UNIVERSAL MUSIC | ) | |
| PUBLISHING, INC., MICHAEL | ) | |
| TUCKER, UMG RECORDINGS, INC., | ) | |
| UNIVERSAL MUSIC GROUP | ) | |
| DISTRIBUTION CORP., JULIA | ) | |
| MICHAELS, and JUSTIN TRANTER, | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Casey Dienel files this action for copyright infringement of her original musical composition "Ring the Bell" and her original sound recording "Ring the Bell." The Defendants are the performers, writers, producers, publishers, record labels, and distributors of the infringing and derivative musical composition "Sorry," the infringing sound recording "Sorry" (performed by Justin Bieber), the infringing "Sorry" music video, and other products exploiting the infringing musical composition and sound recording.

# I. **THE PARTIES**

1.      Plaintiff Casey Dienel is a professional musician, songwriter, and performer.  Plaintiff performs under the name "White Hinterland."

2.      Defendant Warner-Tamerlane Publishing Corp. ("Warner-Tamerlane") is a California corporation, with offices and recording studios at 20 Music Square E, Nashville, Tennessee 37203.   Warner-Tamerlane is registered to conduct business in Tennessee and maintains a registered agent in Tennessee.  Warner-Tamerlane conducts systematic and continuous business in Tennessee, including but not limited to, granting licenses for the song "Sorry" in Tennessee, collecting royalties for the song "Sorry" in Tennessee, promoting and advertising the song "Sorry" in Tennessee, and storing business records related to the infringing song "Sorry" on databases in Tennessee. Warner-Tamerlane is in the business of music publishing and exploiting musical composition copyrights.   Warner-Tamerlane owns a portion of the infringing musical composition "Sorry."  In addition, Warner-Tamerlane administers the infringing musical composition "Sorry."

3.      Defendant Julia Michaels is a professional songwriter and musician. Michaels is a writer of the infringing musical composition "Sorry." She conducts systematic and continuous business in Tennessee, including but not limited to, selling the infringing song "Sorry" in Tennessee, distributing the infringing song "Sorry" in Tennessee, granting licenses for the song "Sorry" in Tennessee, collecting royalties for the song "Sorry" in Tennessee, promoting and advertising the song "Sorry" in Tennessee, and storing business records related to the infringing song "Sorry" on databases in

Tennessee. Michaels' music publisher is Warner-Tamerlane. Michaels' management team, Advanced Alternative Media, maintains an office at 1600 17th Avenue South, Nashville, Tennessee 37212.

4. Defendant Justin Tranter is a professional songwriter and musician. Tranter is a writer of the infringing musical composition "Sorry." He conducts systematic and continuous business in Tennessee, including but not limited to, selling the infringing song "Sorry" in Tennessee, distributing the infringing song "Sorry" in Tennessee, granting licenses for the song "Sorry" in Tennessee, collecting royalties for the song "Sorry" in Tennessee, promoting and advertising the song "Sorry" in Tennessee, and storing business records related to the infringing song "Sorry" on databases in Tennessee. Tranter's music publisher is Warner-Tamerlane.

5. Defendant Michaels is a party to an exclusive writer's contract with Warner-Tamerlane. Upon information and belief, Warner-Tamerlane is the exclusive administrator for Michaels and her music publishing designation "Thanks for the Songs Richard."

6. Defendant Tranter is a party to an exclusive writer's contract with Warner-Tamerlane. Upon information and belief, Warner-Tamerlane is the exclusive administrator for Tranter and his music publishing designation "Justin's School for Girls Publishing."

7. Justin Bieber is a professional songwriter, musician, and performer. Bieber is a Canadian citizen. Bieber, through his music publishing company, is an owner and songwriter of the infringing musical composition "Sorry." Bieber is a performer of the

infringing composition and sound recording "Sorry," and he conducts systematic and continuous business in Tennessee, including, but not limited to, selling the album *Purpose*, containing the infringing sound recording and musical composition "Sorry," through brick-and-mortar stores in Tennessee and through digital downloads and interactive streams in Tennessee. Bieber has sold thousands of concert tickets in Tennessee and is scheduled to perform a live concert in Nashville, Tennessee, on June 27, 2016. Bieber is referred to as the "Infringing Performer."

8.　Bieber Time Publishing LLC ("Bieber Time") is a Delaware limited liability company that conducts business throughout the world, including in Nashville, Tennessee.

9.　Justin Bieber formed Bieber Time to hold his musical composition copyrights and to conduct his music publishing business. Bieber Time is a copyright owner of the infringing musical composition "Sorry." Bieber Time conducts systematic and continuous business in Tennessee, including but not limited to, granting licenses for the song "Sorry" in Tennessee, collecting royalties for sales of the song "Sorry" in Tennessee, and promoting and advertising the song "Sorry" in Tennessee.

10.　Universal Music Publishing Inc. (d/b/a Universal Music Publishing Group) ("UMPG") is a California corporation with offices at 1904 Adelicia Street, Nashville, Tennessee 37212. UMPG conducts systematic and continuous business in Tennessee, including but not limited to, granting licenses for the song "Sorry" in Tennessee, collecting royalties for the song "Sorry" in Tennessee, promoting and advertising the song "Sorry" in Tennessee, and storing business records related to the infringing song

"Sorry" on databases in Tennessee. UMPG is in the business of music publishing and exploiting musical composition copyrights. Upon information and belief, UMPG owns a portion of the infringing musical composition "Sorry." In addition, UMPG administers the infringing musical composition "Sorry" on behalf of Bieber Time.

11. Sonny Moore (p/k/a "Skrillex") is a professional songwriter, performer, producer, and DJ. Skrillex is a producer of the infringing sound recording "Sorry." Skrillex, through his music publishing company, is an owner and songwriter of the infringing musical composition "Sorry." Skrillex travels throughout the world for his vocation, including in Tennessee. Skrillex conducts systematic and continuous business in Tennessee, including, but not limited to, advertising, promoting, and selling the album *Purpose*, containing the infringing sound recording and musical composition "Sorry," through brick-and-mortar stores in Tennessee and through digital downloads and interactive streams in Tennessee.

12. Kobalt Music Publishing America, Inc. ("Kobalt") is a Delaware corporation with offices located 1019 17th Avenue S., Ste. 201, Nashville, Tennessee, 37212. Kobalt is registered to conduct business in Tennessee and maintains a registered agent in Tennessee. Kobalt is the exclusive administrator for Skrillex and his publishing designation "Copaface."

13. Michael Tucker (p/k/a Blood p/k/a Michael Diamond f/k/a Blood Pop f/k/a Blood Diamonds) is a professional songwriter and producer. Tucker is a producer of the infringing sound recording "Sorry." Tucker, through his music publishing company, is an owner and songwriter of the infringing musical composition "Sorry." Tucker

conducts systematic and continuous business in Tennessee, including but not limited to, advertising, promoting, and selling the album *Purpose*, containing the infringing sound recording and musical composition "Sorry," through brick-and-mortar stores in Tennessee and through digital downloads and interactive streams in Tennessee.

14.     Kobalt is the exclusive administrator for Tucker and his publishing designation "Michael Diamond Music."

15.     Defendant Universal Music Group Distribution Corp. ("UMD") is a Delaware corporation.  UMD has manufactured and distributed the album *Purpose*, which contains the infringing composition and sound recording "Sorry."  UMD conducts systematic and continuous business in Tennessee and has distributed "Sorry" into Tennessee and this judicial district.

16.     Defendant Def Jam Recordings, a division of UMG Recordings, Inc. ("Def Jam") is a Delaware corporation.  Through its parent, subsidiary, and/or divisions, Def Jam has released the album *Purpose*, which contains the infringing composition and sound recording "Sorry." Def Jam is the copyright owner of the infringing sound recording of "Sorry."   Def Jam conducts systematic and continuous business in Tennessee, including directing the distribution of "Sorry" to Tennessee and this judicial district.  Def Jam maintains an office, through its parent Universal, at 401 Commerce Street, Nashville, Tennessee 37219.

17.     Defendants Michaels, Tranter, Bieber, Moore, and Tucker are collectively referred to as the "Infringing Writers."

18.     Defendants Moore and Tucker are collectively referred to as the "Infringing Producers."

## II.  JURISDICTION AND VENUE

19.     This Court has subject-matter jurisdiction over this cause under 28 U.S.C. §§ 1331 and 1338 because Plaintiff's claims arise under the Copyright Act, 17 U.S.C. § 101, *et seq.*

20.     This Court has personal jurisdiction over Defendants because the Defendants' infringement, individually and in concert with one another, has occurred, and is continuing, in this judicial district, the Defendants and/or their agents operate businesses within this judicial district, and the Defendants conduct systematic and continuous business in this judicial district.

21.     Venue is proper under 28 U.S.C. §§ 1391 and 1400 because the infringement is continuing in this judicial district, the Defendants and/or their agents operate businesses within this judicial district, and Defendants are subject to personal jurisdiction in this judicial district.

## III.  FACTS

### Plaintiff's Creation of "Ring the Bell"

22.     Plaintiff Casey Dienel is a talented songwriter, musician, and producer who performs and records under the name "White Hinterland."

23.     Plaintiff studied classical voice as a teenager and later at one of the country's most reputable music schools.

24.     Throughout her career, Plaintiff has released several widely-distributed recordings, forging relationships with producers, musicians, and artists in the pop and indie-pop space.

25.     Plaintiff owns and controls her music publishing.

26.     Plaintiff spent over four years creating and molding the song "Ring the Bell."

27.     In 2012, Plaintiff created, edited, revised, and composed the original and unique vocal riff featured in "Ring the Bell."

28.     The vocal riff is a qualitatively and quantitatively distinct and integral element of "Ring the Bell."

29.     Plaintiff's "Ring the Bell" opens up with the signature and unique vocal riff, which provides the introduction and primary musical motive for the structure of the song.  This vocal riff – also referred to as a loop, chant, or hook – is crucial to the sound recording and composition of "Ring the Bell," creating the backbone for the composition and the song's initial hook.  After opening the song, the vocal riff repeats throughout, serving as a unifying thread for "Ring the Bell."

30.     The musical composition copyright (Registration Number: PA0001964024) and sound recording copyright (Registration Number: SR0000763827) for "Ring the Bell" have been registered with the United States Copyright Office.

31.     Plaintiff does not permit the exploitation of "Ring the Bell" without license and permission, as it represents unique and valuable intellectual property to her.

## Plaintiff's Release of "Ring the Bell"

32.     In early 2014, after several years of hard work and production, Plaintiff released her third White Hinterland album entitled *Baby*, via record label Dead Oceans.

33.     Dead Oceans is an independent record label that maintains a roster of well-known acts.

34.     Dead Oceans operates under the umbrella of the Secretly Group, which is a family of American independent record labels.

35.     The influential Secretly Group is made up of record labels Secretly Canadian, Jagjaguwar, Dead Oceans, and The Numero Group. These record labels share offices and staff.

36.     SC Distribution, Secretly Canadian's in-house distribution arm, distributes the sound recordings for all of the Secretly Group record labels.

37.     Dead Oceans, through SC Distribution, has distributed and sold Plaintiff's album *Baby* throughout the world beginning in 2014.

38.     The first single released from the album *Baby* was the song "Ring the Bell."

39.     Since February 13, 2014, the music video for "Ring the Bell" has been available to be viewed and heard throughout the world on YouTube, https://www.youtube.com/watch?v=_VW5xIXdfgw.

40.     Since April 2014, the album *Baby* and the single "Ring the Bell," have been commercially available for purchase or digital stream through record stores, Amazon.com, iTunes, Spotify, Rhapsody, Deezer, and other major music outlets.

41.     The public has streamed "Ring the Bell" approximately 800,000 times on various platforms since the song's release.

42.     Plaintiff's album *Baby* and the first single "Ring the Bell" were well received by the public and national critics, such as NPR and Sound Exploder podcast, as well as other influential online and print publications (e.g., *Rolling Stone, Spin, NME, Stereogum, Pitchfork*).

43.     The February 13, 2014 edition of *Rolling Stone* magazine listed Plaintiff's song "Ring the Bell" as one of the magazine's "favorite songs, albums, and videos." That same edition also featured a report on Defendant Skrillex.

44.     The April 10, 2014 edition of *Rolling Stone* magazine featured a print-review of Plaintiff's album *Baby*. In that same edition, and only a few pages before the review of *Baby*, Defendant Skrillex's album received a prominent review.

45.     In 2014, Plaintiff participated in a concert tour, performing "Ring the Bell" in over fifty live shows in major cities and influential venues in the United States and abroad.

## The Collaboration and Creation of Justin Bieber's "Sorry"

46.     Justin Bieber is a superstar and perhaps the world's most popular artist.

47.     In 2012, Bieber released the album *Believe.*

48.     Thomas Pentz (p/k/a Diplo) ("Diplo"), is a producer of Bieber's *Believe* and, upon information and belief, a strong creative influence on Bieber.

49. In addition to his production work, Diplo is the mastermind, songwriter, producer, and lead performer of a popular electronic music group known as "Major Lazer."

50. In 2013, Diplo and Major Lazer signed a recording contract with the indie-label Secretly Canadian, which operates under the same Secretly Group family of labels as Plaintiff's Dead Oceans label.

51. Diplo consistently works with and collaborates with Skrillex, another successful and influential producer and performer. Skrillex provided vocals and/or guitar on multiple Major Lazer recordings. In addition, the two artists record and perform together under the moniker "Jack Ü."

52. In late 2014, Diplo and Skrillex were looking for vocal tracks to include on Jack Ü's debut album.

53. In response to an inquiry from Diplo, Justin Bieber's manager, Scooter Braun, told Diplo and Skrillex that Bieber had new material that might work.

54. Skrillex, Diplo, and Justin Bieber recorded the song "Where are U Now" with Skrillex and Diplo's band Jack Ü. Jack Ü released this song in February 2015, and it became an instant hit.

55. Bieber then teamed up with Skrillex, Diplo, and producer Michael Tucker p/k/a Blood to create Bieber's third album *Purpose*, incorporating the same integral vocal manipulation techniques that made "Where are U Now" a success.

56.     Skrillex, Diplo, and Blood created and produced a number of musical tracks for Bieber to consider for inclusion on the *Purpose* album and, specifically, the music for the song "Sorry."

57.     Prior to the creation of the music for "Sorry," Skrillex, Diplo, and Blood all had access to, and upon information and belief, were familiar with Plaintiff's "Ring the Bell" due to the widespread commercial release of "Ring the Bell," the music press's coverage and reviews of Plaintiff's "Ring the Bell," Diplo's database of songs kept on his hard drive, Diplo's and Plaintiff's shared label family, and *Rolling Stone* magazine's coverage of Plaintiff and Skrillex in the same issue on two separate occasions.

58.     At a songwriting session for Bieber in 2015, songwriters Julia Michaels and Justin Tranter were invited to Bieber's studio to listen to rough tracks that Skrillex, Diplo, and Tucker had created for Bieber.  The intent, and ultimately the product, of that session was for Michaels and Tranter to craft lyrics to the song that eventually became "Sorry."

59.     Bieber, Michaels, Tranter, Tucker and Skrillex are credited with writing the song "Sorry," and Tucker and Skrillex are credited with producing the song "Sorry."

60.     The Infringing Writers and Producers had access to Plaintiff's "Ring the Bell" prior to the creation of "Sorry," as Defendants literally sampled Plaintiff's "Ring the Bell."

61.     The Infringing Writers and Producers had access to Plaintiff's "Ring the Bell" prior to the creation of "Sorry," through widespread distribution of "Ring the Bell."

62.     The Infringing Writers and Producers had access to Plaintiff's "Ring the Bell" prior to the creation of "Sorry," through national and influential Internet and print publications.

63.     The Infringing Writers and Producers had access to Plaintiff's "Ring the Bell" prior to the creation of "Sorry," through national radio and podcasts.

64.     The Infringing Writers and Producers had access to Plaintiff's "Ring the Bell" prior to the creation of "Sorry," through the small, professional network of indie-pop and third-party concurrent dealings.

**<u>Striking Similarity and Copying</u>**

65.     Plaintiff owns a protectable copyright interest, both in the musical composition and the sound recording, to her original and unique song "Ring the Bell," which includes the unique and original vocal sample and riff that appears throughout "Ring the Bell."

66.     The notes of the "Ring the Bell" vocal riff correspond with the tonic of the song without overstating its progression.  The notes of the vocal riff foreshadow and set up the mood and feeling of the song.  The vocal riff moves upward, giving the chant a certain open, uplifting freshness.

67.     Voices are original and difficult to imitate.

68.     Plaintiff's voice is a unique instrument.  The timbre of Plaintiff's voice is inextricably linked to her writing, especially in "Ring the Bell."

69.     Plaintiff's vocal riff in "Ring the Bell" is specific in terms of pitch, register, orchestration, and overall use, and it is the defining "hook" of the song and the seed from

which the entire song grows. Plaintiff positioned the signature vocal riff of "Ring the Bell" to introduce her song because she wanted to set the tone immediately and swiftly for what follows. The vocal riff grabs the listener and allows the listener to identify her song. It functions as a hook and a complement to the chorus. After the introduction, the vocal riff and sample repeat throughout "Ring the Bell."

70.     To write, create, produce, and record the song "Sorry," the Defendants knowingly and unlawfully copied original, protectable elements of the musical composition of "Ring the Bell" and unlawfully sampled Plaintiff's protectable sound recording of "Ring the Bell."

71.     Defendants manipulated and/or altered Plaintiff's sound recording by adding additional effects.

72.     Defendants failed to secure a license to sample and exploit Plaintiff's "Ring the Bell."

73.     Both "Ring the Bell" and the infringing "Sorry" are performed in the key of E♭ major and in 4/4 meter.

74.     In scientific pitch notation, the four notes of the sampled female vocal riff of both "Ring the Bell" and the infringing "Sorry" are $B^\flat_4 \, C_5, E^\flat_5, \text{and } F_5$. The four pitches are of equal duration and are sung in a rapid succession by Plaintiff's voice. The temporal spacing of the notes of the female vocal riff in both "Ring the Bell" and the infringing "Sorry" are the same.

75.     The specific and unique characteristics of the female vocal riff of both "Ring the Bell" and the infringing "Sorry" are identical.  In both "Ring the Bell" and the infringing "Sorry," these pitches function as a 5-6-1-2 pitch sequence in the key of $E^\flat$-major and determine the energy and feeling for both songs.

76.     Both "Ring the Bell" and the infringing "Sorry" feature keyboard synthesizers, samples, synth bass, drums, and percussion.  Although "Sorry" does not include horns like "Ring the Bell," "Sorry" uses a synthesizer patch to resemble a trumpet.

77.     Both "Ring the Bell" and the infringing "Sorry" feature breath-like sounds to complement the vocal riff.

78.     Plaintiff's protectable vocal riff is crucial to both "Ring the Bell" and "Sorry."

79.     Defendants' compositional and strategic use of Plaintiff's vocal riff is virtually identical to Plaintiff's use of the vocal riff in "Ring the Bell."  Both songs begin by using the vocal riff, without accompanying drum rhythms, in an introductory manner before the rhythm takes over, and both songs return identically, over and over again, to the opening vocal riff like a refrain in a poem, unifying the entire song.

80.     The fundamental bass line of the entire song "Sorry" is derived from Plaintiff's vocal riff, repeating over and over again, emphasizing the key generative nature of the vocal riff. Even when the vocal riff is not present in "Sorry," the bass line

that originally accompanies the vocal riff provides the structure and creative spine for "Sorry."

81.     The duration of "Sorry" is 3 minutes and 21 seconds. Defendants sample Plaintiff's "Ring the Bell" for the first eight seconds of "Sorry," and, then, Defendants repeat Plaintiff's "Ring the Bell" at approximate intervals of 1:05-1:20; 1:27-1:30; 2:28-2:42; and 2:49-3:01.

82.     The identical and/or striking similarity between "Sorry" and the protectable elements of "Ring the Bell" is obvious, such that an ordinary lay listener would instantly recognize the sample and similarity between the songs.

83.     The identical and/or striking similarity of "Sorry" to Plaintiff's song "Ring the Bell" surpasses the realm of generic coincidence and independent creation.

84.     Bieber begins his concerts with the infringing vocal riff and sample.

85.     On March 13, 2016, *The New York Times Magazine* published an in-depth article entitled "25 Songs That Tell Us Where Music is Going." The article lists Bieber's "Sorry" as the number one influential song for the future of pop music and pronounces the vocal riff at issue in this lawsuit (described as "a cooing arpeggio that feels like a gentle breeze on your brain") as "the best part of the song."

86.     In interviews, and like Diplo and Skrillex, Blood emphasizes his focus on, and the importance of, the vocal manipulations of "Sorry." Blood told *Fader*, "From the perspective of the producer, I find the muffled vocal chops to represent the people or situations in which Justin [Bieber] or the listener could be apologetic towards."

87. The conduct of the Defendants constitutes direct, contributory, vicarious and/or willful infringement of Plaintiff's copyrights. All members of the distribution chain are liable for copyright infringement, including the co-writers, producers, and the entities that licensed, distributed, and sold the infringing song "Sorry," both as a single and as part of Bieber's album *Purpose*.

### Refusal to Respond to Plaintiff's Claims of Infringement

88. On December 22, 2015, Plaintiff sent Bieber's lawyer and manager a letter explaining the Defendants' infringement of "Ring the Bell."

89. The letter stated that: "[t]he purpose of this letter is to provide notice of the claims and to open a dialogue regarding potential resolution of these claims….We are hopeful that your client sees the merit in a confidential and private dialogue and negotiated resolution."

90. The Plaintiff attached to the letter a musicology report written by a musicologist based in Nashville, Tennessee, which articulated the Defendants' infringement in technical detail.

91. Despite multiple requests for a response and a phone call confirming that the letter had been received, Bieber ignored Plaintiff's claims and refused to engage in any dialogue regarding a resolution of these claims.

92. Instead, Defendants have continued to exploit "Sorry" and have continued their infringing activity. Defendants have sold thousands of digital downloads, CDs, and vinyl of Bieber's albums *Purpose* featuring the infringing song "Sorry" including in Nashville at Wal-Mart and Grimey's. On Record Store Day, April 16, 2016, Defendants

promoted, distributed, and sold limited-edition vinyl copies of *Purpose* featuring the infringing song "Sorry" in Nashville.

93.    The music video for "Sorry" – which has been viewed over 1.4 billion times with advertisements on YouTube – can be viewed and heard throughout the world on YouTube at, https://www.youtube.com/watch?v=fRh_vgS2dFE.

## IV.  CLAIMS FOR COPYRIGHT INFRINGEMENT

94.    Plaintiff realleges every allegation set forth in paragraphs 1 through 93, and incorporates those allegations by reference.

95.    Plaintiff owns the valid copyright and registration that protects the original musical composition "Ring the Bell."

96.    Plaintiff is an owner of the valid copyright and registration that protects the original sound recording "Ring the Bell."

97.    Plaintiff's copyright registrations establish prima facie evidence of the validity her copyrights.

98.    The musical composition of "Ring the Bell" is an original work.

99.    The sound recording of "Ring the Bell" is an original work.

100.    The Infringing Writers and Infringing Producers had a reasonable opportunity to view, listen, copy, and observe Plaintiff's "Ring the Bell" prior to the creation of "Sorry."

101.    "Ring the Bell" and "Sorry" are so strikingly similar, a claimed defense of "independent creation" is precluded as a matter of law.

102. The Defendants' sampling of Plaintiff's sound recording of "Ring the Bell" is direct evidence of copying.

103. The infringing song "Sorry" samples "Ring the Bell" and copies quantitatively and qualitatively distinct, important, and recognizable portions of "Ring the Bell."

104. The Defendants have, without authorization or permission from Plaintiff, created a derivative work of "Ring the Bell" and reproduced, distributed, advertised, produced, published, displayed, publicly performed, and otherwise exploited Plaintiff's copyrighted works, resulting in substantial revenue for Defendants.

105. Under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, Defendants have infringed Plaintiff's copyright interest in and relating to both the sound recording and musical composition for "Ring the Bell" by reproducing, adapting, distributing, creating derivative work(s), and publicly performing "Ring the Bell" through the exploitation of "Sorry."

106. From the creation of the infringing composition and sound recording "Sorry," all of the Defendants have infringed Plaintiff's copyright interest in "Ring the Bell" by (a) substantially copying and publicly performing (or authorizing the copying and performances), including publicly performing "Sorry" on YouTube, radio, live concerts, personal appearances, social media, video, television, and otherwise; (b) authorizing the reproduction, distribution, and sale of the CDs, records, streams, and digital downloads of "Sorry" and *Purpose* through the execution of licenses, and/or selling, manufacturing, and/or distributing "Sorry" and *Purpose*; (c) substantially copying

"Ring the Bell" in marketing, promotion, and advertisements for the sale of Justin Bieber records, videos, concert tickets and other merchandise; and (d) participating in and furthering the infringing song "Sorry," all through substantial use of "Ring the Bell," packaged in many configurations, mixes, versions, downloads, and performed in many ways including radio, concerts, personal appearances, video, television, and other media.

107. Despite making a demand, Plaintiff has received no copyright ownership interest in and for any of Defendants' exploitations of "Sorry."

108. The Defendants' conduct was intentional and undertaken with a complete disregard of Plaintiff's rights or the Defendants' conduct was willful and undertaken with actual or constructive notice that such conduct violated Plaintiff's rights and done in reckless disregard of Plaintiff's copyright interests. The infringement by Defendants continues to be willful and knowing.

109. The Infringing Writers, Infringing Performer, and Infringing Producers continue to exploit "Sorry" at public appearances, concerts, on the radio, on television, and on the Internet.

110. Defendants have induced, or materially contributed to, the infringing conduct of others, such that they should be found contributorily liable.

111. Defendants had the right and ability to control other infringers and have derived a direct financial benefit from the infringement of "Ring the Bell" such that the Defendants should be found vicariously liable.

112. Defendants' wrongful conduct has deprived Plaintiff of the benefit of her exclusive right to distribute, copy, display, and sell her copyrighted works, and has

deprived Plaintiff of the licensing fees and royalties to which she would be entitled if the copyrighted works at issue were properly licensed.

113.    As a direct and proximate result of the conduct of the Defendants, Plaintiff has been irreparably harmed and suffered actual damages including lost profits, lost opportunities, loss of goodwill, and lost publicity.

114.    Under 17 U.S.C. § 504(b), Plaintiff is entitled to damages, including the substantial profits of the Defendants, in an amount to be proven at trial. Such damages cannot be fully ascertained by Plaintiff at this time.

115.    Plaintiff is entitled to her costs and reasonable attorneys' fees under 17 U.S.C. § 505.

116.    All Defendants are responsible in some manner for the events described and are liable to Plaintiff for damages available under the Copyright Act. As co-infringers, the Defendants are jointly and severally liable for all damages owed to Plaintiff for the infringements.

117.    Under 17 U.S.C. § 502, Plaintiff is entitled to an injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of "Sorry."

WHEREFORE, the Plaintiff respectfully prays for entry of judgment in her favor or an order providing the following relief against Defendants:

a.    A declaration that the Defendants have infringed Plaintiff's "Ring the Bell" (Musical Composition) in violation of the Copyright Act;

b.    A declaration that the Defendants have infringed Plaintiff's "Ring the Bell" (Sound Recording) in violation of the Copyright Act;

c.	A declaration that the Defendants are directly, vicariously, and/or contributorily liable for copyright infringement of Plaintiff's Ring the Bell (Musical Composition) and Ring the Bell (Sound Recording);

d.	An award of damages under 17 U.S.C. § 504(b), including actual damages and the Defendants' profits to be proven at trial;

e.	An award of Plaintiff's attorneys' fees and costs under 17 USC § 505;

f.	An injunction preventing further infringement of Plaintiff's "Ring the Bell" copyrights; and

g.	Any other relief this Court finds just and proper.

**Plaintiff demands a trial by jury.**

Respectfully submitted,

_Howell O'Rear_

_____
Howell O'Rear (TN BPR #26509)
Seth M. McInteer (TN BPR #26471)
McInteer & O'Rear PLC
2801 12th Avenue South
Nashville, TN 37204
Ph. 615-724-6207
Fax 615-523-1311
www.mcolawfirm.com
howell@mcolawfirm.com
seth@mcolawfirm.com